**David H. HILLMAN; Suzanne Hillman, Petitioners– Appellees,**

v.

**INTERNAL REVENUE SERVICE, Respondent–Appellant.**

No. 00–1915.

United States Court of Appeals, Fourth Circuit.

Argued: Feb. 28, 2001.

Decided: April 17, 2001.

---

**ARGUED:** Kenneth L. Greene, Tax Division, United States Department of Justice, Washington, DC, for Appellant. Stefan F. Tucker, Venable, Baetjer, Howard & Civiletti, L.L.P., Washington, DC, for Appellees. **ON BRIEF:** Paula M. Junghans, Acting Assistant Attorney General, Howard T. Perelmuter, Tax Division, United States Department of Justice, Washington, DC, for Appellant. David E. Sellinger, Susan Edlavitch, Damon W.D. Wright, Venable, Baetjer, Howard & Civiletti, L.L.P., Washington, DC, for Appellees.

Before WILKINS and WILLIAMS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

## OPINION

HAMILTON, Senior Circuit Judge:

In mid-July 1997, David and Suzanne Hillman (the Hillmans) received written notice from the Commissioner of the United States Internal Revenue Service (the Commissioner) that a deficiency existed in the amount of federal income taxes they had paid for taxable years 1993 and 1994. According to the notice, the Hillmans still owed the government $294,556.00 in federal income taxes for taxable year 1993 and $309,696.00 in federal income taxes for taxable year 1994. The Hillmans contested the full amounts of these deficiencies by filing a timely petition for redetermination in the United States Tax Court (the Tax Court). At the time the Hillmans filed their petition, they were residents of Bethesda, Maryland.

The parties submitted this case to the Tax Court on the following stipulated facts. During taxable year 1993, David Hillman was the sole shareholder of Southern Management Corporation (SMC), a corporation taxed under Subchapter S of

the Internal Revenue Code (IRC).[1] During taxable year 1994, David Hillman owned 94.43 percent of SMC's stock.

SMC provided real estate management services to approximately ninety entities, including joint ventures, limited partnerships, and Subchapter S corporations, which were involved in real estate rental activities.[2] At all times relevant to the issues in this appeal, David Hillman owned, either directly or indirectly, interests in each of these entities (the Passthrough Entities). The general partner of each limited partnership was either David Hillman or an upper tier partnership or Subchapter S corporation in which he owned an interest.

During taxable years 1993 and 1994, the Hillmans did not participate in the activities of the Passthrough Entities. The Hillmans did, however, participate in the activities of SMC by performing real estate management services SMC had contracted to perform for the Passthrough Entities. Indeed, David Hillman materially participated in SMC's real estate management activity in excess of 500 hours.[3]

The Hillmans reported as income the compensation paid to them for their real estate management services offered through SMC for taxable years 1993 and 1994. In computing their taxable income for 1993 and 1994, the Hillmans deducted the total amounts of the management fee expenses of the Passthrough Entities for taxable years 1993 and 1994 from the gross income they received during those years through SMC for providing the management services that gave rise to the management fee expenses. The notice of deficiency disallowed this deduction, thus resulting in the claimed tax deficiencies at issue in this appeal.

On April 18, 2000, the Tax Court entered a final decision fully in favor of the Hillmans. The Tax Court accompanied its final decision with a published opinion holding the Hillmans properly deducted the management fee expenses of the Passthrough Entities from their related management fee income for purposes of lowering the amounts of their taxable income for taxable years 1993 and 1994. The Commissioner filed a timely appeal. We have appellate jurisdiction pursuant to 26 U.S.C. § 7482(a)(1).

## I.

In this appeal, we are presented with the following question of law: May the Hillmans legally deduct their passive management fee expenses from their related nonpassive management fee income for purposes of lowering their taxable income for taxable years 1993 and 1994? We review this question of law *de novo*. *Balkissoon v. Commissioner*, 995 F.2d 525, 527 (4th Cir.1993).

1. Shareholders of a corporation taxed under Subchapter S of the IRC may elect a passthrough taxation system, under which the corporation's profits pass through directly to its shareholders on a *pro rata* basis and are reported on each shareholder's individual federal income tax returns. 26 U.S.C. § 1366(a)(1)(A).

2. For purposes of federal income tax liability, joint venturers and partners are taxed under a passthrough taxation system. 26 U.S.C. § 701–04, 761(a). Thus, each joint venturer or partner is individually taxed on his distributive share of joint venture or partnership income. *Id.*

3. During taxable years 1993 and 1994, SMC also conducted other operations in addition to real estate management services, such as recreational services, medical insurance plan underwriting, credit/collection services, and a maintenance training academy. The Hillmans did not materially participate in any of these other operations of SMC.

The Commissioner insists this question is easily answered by applying the plain language of IRC § 469(a),[4] which prohibits individuals, estates, trusts, closely held C corporations, and personal service corporations from deducting passive activity losses or passive activity credits from nonpassive gains in an effort to lower taxable income. 26 U.S.C. § 469(a). Specifically, IRC § 469(a) provides:

(a) *Disallowance.*—

(1) *In General.*—If for any taxable year the taxpayer is described in paragraph (2), neither—

(A) the passive activity loss, nor

(B) the passive activity credit, for the taxable year shall be allowed.

(2) *Persons described.*—The following are described in this paragraph:

(A) any individual, estate, or trust,

(B) any closely held C corporation, and

(C) any personal service corporation.

*Id.* For purposes of IRC § 469, the term "passive activity" is defined as an activity involving the conduct of a trade or business in which the taxpayer does not materially participate. *Id.* § 469(c)(1). With certain exceptions not relevant here, rental activity is a passive activity. *Id.* § 469(c)(2). Also for purposes of IRC § 469, the term "passive activity loss" is defined as "the amount (if any) by which— (A) the aggregate losses from all passive activities for the taxable year, exceed (B) the aggregate income from all passive activities for such year." *Id.* § 469(d)(1). The Commissioner points out that the somewhat harsh result of applying IRC § 469(a) in a self-charged or wash transaction is tempered by IRC § 469(b), which provides that "any loss or credit from an activity which is disallowed under subsection (a) shall be treated as a deduction or credit allocable to such activity in the next taxable year." *Id.* § 469(b).

The Hillmans do not dispute, nor could they, that straightforward application of the plain language of IRC § 469(a) prohibits them from deducting the management fee expenses of the Passthrough Entities for taxable years 1993 and 1994 from their related management fee income for those same respective years.[5] However, the Hillmans take the position that the plain language of IRC § 469(a) should not so apply. The Hillmans' position is based upon their argument that, when IRC § 469(*l*)(2) is read together with certain portions of IRC § 469's legislative history, it is clear that Congress directed the Secretary of the Treasury (the Secretary) to issue a regulation excepting self-charged management fees resulting in no accretion of the taxpayer's actual wealth from operation of IRC § 469(a), and the Secretary's failure to comply with this direction does not prevent them from avoiding operation of IRC § 469(a). The Tax Court's reasoning in support of its ruling in favor of the Hillmans essentially tracks this argument made by the Hillmans.

IRC § 469(*l*)(2), relied upon by the Hillmans, provides that the Secretary "shall prescribe such regulations as may be necessary or appropriate to carry out provisions of [IRC § 469], including regulations—... which provide that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of

---

**4.** All references to IRC § 469 are to the version in effect during taxable years 1993 and 1994.

**5.** Indeed, the Hillmans do not dispute that under a straightforward application of the plain language of IRC § 469, the management fee expenses at issue are passive activity losses and the related management fee income at issue resulted from nonpassive activity.

expenses allocable to such income). . . ." 26 U.S.C. § 469(*l*)(2). The following excerpt from the House Conference Report for the Tax Reform Act of 1986 is the legislative history of IRC § 469 upon which the Hillmans rely:

> Self-charged interest.—A further issue with respect to portfolio income arises where an individual receives interest income on debt of a passthrough entity in which he owns an interest. Under certain circumstances, the interest may essentially be "self-charged," and thus lack economic significance. For example, assume that a taxpayer charges $100 of interest on a loan to an S corporation in which he is the sole shareholder. In form, the transaction could be viewed as giving rise to offsetting payments of interest income and passthrough interest expense, although in economic substance the taxpayer has paid the interest to himself.

> Under these circumstances, it is not appropriate to treat the transaction as giving rise both to portfolio interest income and to passive interest expense. Rather, to the extent that a taxpayer receives interest income with respect to a loan to a passthrough entity in which he has an ownership interest, such income should be allowed to offset the interest expense passed through to the taxpayer from the activity for the same taxable year.

* * *

> The conferees anticipate that Treasury regulations will be issued to provide for the above result. Such regulations may also, to the extent appropriate, identify other situations in which netting of the kind described above is appropriate with respect to a payment to a taxpayer by an entity in which he has an ownership interest. Such netting should

not, however, permit any passive deductions to offset nonpassive income except to the extent of the taxpayer's allocable share of the specific payment at issue.

H.R. Conf. Rep. No. 99–841, at II–146–47 (1986). The Secretary has promulgated no permanent regulations exempting self-charged items of income and expenses from operation of IRC § 469(a), and has only issued one proposed regulation in this regard. That proposed regulation deals *only* with the self-charged interest situation specifically discussed in the just quoted legislative history of IRC § 469 and the reverse of that situation (*i.e.,* when a passthrough entity loans money to its owner). Prop. Treas. Reg. § 1.469–7, 56 Fed. Reg. 14,034 (April 5, 1991).

■ We hold IRC § 469(a) prohibits the Hillmans from legally deducting their passive management fee expenses from their related nonpassive management fee income for purposes of lowering their taxable income for taxable years 1993 and 1994. The threshold problem with the Hillmans' position is that nothing in the plain language of IRC § 469 suggests that an exception to IRC § 469(a)'s general prohibition against a taxpayer's deducting passive activity losses from nonpassive activity gains exists where, as in the present case, the taxpayer essentially paid a management fee to himself. The general rule is that unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language (the Plain Meaning Rule). *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917) ("[T]he rules which are to aid doubtful meanings need no discussion" when the statutory language is clear and unambiguous.); *United States v. Morison,* 844 F.2d 1057, 1064 (4th Cir.1988) ("[W]hen the terms of a statute are clear, its language is conclusive and

courts are not free to replace that clear language with an unenacted legislative intent." (internal quotation marks and alteration marks omitted)).

 The Hillmans' argument calling for us to ignore the plain language of IRC § 469(a) implicates two extremely narrow exceptions to the Plain Meaning Rule. The first exception applies when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary. *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir.2000). The second exception implicated by the Hillmans' argument applies when literal application of the statutory language at issue "results in an outcome that can truly be characterized as absurd, *i.e.*, that is so gross as to shock the general moral or common sense...." *Id.* (internal quotation marks omitted). If either of these exceptions apply, "then we can look beyond an unambiguous statute and consult legislative history to divine its meaning." *Id.* Again, the instances in which either of these exceptions to the Plain Meaning Rule apply "are, and should be, exceptionally rare." *Id.*

When considering the applicability in the case before us of the first described exception to the Plain Meaning Rule, we must consider whether clearly expressed congressional intent exists to the effect that taxpayers such as the Hillmans are exempt from operation of IRC § 469(a) in a self-charged or wash transaction involving passive management fee expense and related nonpassive management fee income. Unfortunately for the Hillmans, no such clearly expressed congressional intent exists. First, no statutory language, including the statutory language of IRC § 469(*l*)(2), is of help to the Hillmans in this regard. Second, the legislative history of IRC § 469 does not clearly express

the congressional intent the Hillmans need in order to prevail on their argument. Indeed, the only situation the legislative history of IRC § 469 specifies that deserves exception from operation of IRC § 469(a) is one involving self-charged interest. H.R. Conf. Rep. No. 99–841, at II–146 (1986). Moreover, the legislative history further states, without qualification, that the Secretary has discretion to identify other situations in which offsetting otherwise prohibited under IRC § 469(a) will be allowed. H.R. Conf. Rep. No. 99–841, at II–146–47 (1986). Without clearly expressed congressional intent, contrary to the result produced by literally applying the plain language of IRC § 469(a) to the factual situation presented in this case, the Hillmans cannot avail themselves of the first described exception to the Plain Meaning Rule.

The Hillmans also cannot avail themselves of the second described exception to the Plain Meaning Rule—that literal application of the statutory language at issue produces an absurd result. Literal application of the plain language of IRC § 469(a) to the factual situation before us does not produce a result that is so gross as to shock our general moral or common sense. In this regard, we point out that the somewhat harsh result created by literally applying IRC § 469(a) to the wash transaction at issue here is considerably tempered by the fact that IRC § 469(b) allows the Hillmans to carry forward the passive management fee expenses for taxable years 1993 and 1994 to subsequent taxable years as deductions allocable to the activity of the Passthrough Entities for those next years. We do note, however, that we see no reason why the factual situation before is not deserving of exemption from operation of IRC § 469(a) as proposed by the Secretary with regard to an interest payment in a self-charged

transaction, *see* Prop. Treas. Reg. § 1.469–7, 56 F.R. 14,034 (April 5, 1991). But, this is an inequity in the United States Tax Code that only Congress or the Secretary (as the holder of delegated authority from Congress) has the authority to ameliorate.

## II.

In summary, we hold that IRC § 469(a) prohibits the Hillmans from legally deducting their passive management fee expenses from their related nonpassive management fee income for purposes of lowering their taxable income for taxable years 1993 and 1994. Accordingly, we reverse the decision of the Tax Court.

*REVERSED.*