PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

WILLIAM THOMAS HATCHER,

        *Defendant-Appellant.*

No. 07-4839

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, Chief District Judge.
(1:07-cr-00012-jpj)

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

RICHARD DEAN HINEN,

        *Defendant-Appellant.*

No. 07-4845

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
James P. Jones, Chief District Judge.
(2:07-cr-00005-jpj)

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GREGORY V. ROBERTS,

*Defendant-Appellant.*

No. 07-5008

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Norman K. Moon, District Judge.
(6:07-cr-70031-nkm)

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOHN EDWARD SAWN, III, a/k/a
John Edward Sawn,

*Defendant-Appellant.*

No. 07-5070

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Norman K. Moon, District Judge.
(6:07-cr-00020-nkm-1)

Argued: October 30, 2008

Decided: March 13, 2009

Before KING, GREGORY, and SHEDD, Circuit Judges.

Reversed and vacated by published opinion. Judge Gregory wrote the majority opinion, in which Judge King joined. Judge Shedd wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Christine Madeleine Spurell, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellants. Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee. **ON BRIEF:** Larry W. Shelton, Federal Public Defender, Roanoke, Virginia; Randy V. Cargill, Nancy C. Dickenson, Assistant Federal Public Defenders, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellants. Julia C. Dudley, Acting United States Attorney, Roanoke, Virginia, for Appellee.

## OPINION

GREGORY, Circuit Judge:

In these consolidated appeals, William T. Hatcher, Richard Dean Hinen, Gregory V. Roberts, and John Edward Sawn appeal their convictions. Each of the Appellants was convicted of knowingly failing to register or update their registration as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a) (2006). The Appellants argue that SORNA is unconstitutional because it is not a valid exercise of congressional authority and because it violates the non-delegation doctrine, the Ex Post Facto Clause, and the Due Process Clause of the Fifth Amendment. However, we need not reach these constitutional questions because we find that, as a matter of statutory interpretation, SORNA's registration requirements did not apply to the Appellants at the time they

committed the acts giving rise to their indictments. Therefore, we must reverse the convictions and vacate the sentences imposed in connection with those convictions.

I.

The Appellants were convicted of sex offenses in state courts between 1993 and 2001. All of the Appellants had finished serving the sentences imposed on them for those offenses prior to July 27, 2006, the enactment date of SORNA. As a result of their convictions, the Appellants were required to register under the sex offender registration systems of their respective states, and all of the Appellants initially complied with those registration requirements. At various times between July 27, 2006, and February 28, 2007, the Appellants moved to other states and failed to comply with SORNA's continuing registration requirements.

The Appellants were indicted on one count of traveling in interstate or foreign commerce and knowingly failing to register or update a sex offender registration as required by SORNA, in violation of 18 U.S.C. § 2250(a) (2006). Each of the Appellants was indicted after February 28, 2007.[1] The Appellants filed motions to dismiss their respective indictments, but those motions were denied by the district courts.[2] Hatcher, Roberts, and Sawn each entered a conditional guilty plea, preserving the right to appeal the denial of the motion to dismiss. Hinen was convicted in a jury trial.

---

[1]Hatcher was initially charged via criminal complaint on February 23, 2007, with violating 18 U.S.C. § 2250(a) (2006), but he was later indicted for the same charge on March 6, 2007.

[2]Hinen and Roberts argued in their motions to dismiss that the Western District of Virginia was an improper venue for the action, but the district courts found venue to be proper. Because we hold that the district courts erred in denying the Appellants' motions to dismiss on other grounds, we need not consider this alternative ground for reversal.

Hatcher was sentenced to three years probation and ordered to pay a mandatory special assessment. Hinen was sentenced to three years probation, fined $450, and ordered to pay a mandatory special assessment. Roberts was sentenced to time served, five years supervised release, and ordered to pay a mandatory special assessment. Sawn was sentenced to thirty months imprisonment, five years supervised release, and ordered to pay a mandatory special assessment. The Appellants timely appeal.

## II.

This Court reviews de novo the district court's denial of a motion to dismiss an indictment where the denial depends solely on questions of law. *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir. 1993); *see also United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002).

## III.

### A.

On July 27, 2006, the Adam Walsh Child Protection and Safety Act of 2006 ("AWA") was signed into law. Pub. L. No. 109-248, §§ 101-55, 120 Stat. 587, 590-611 (2006). Title I of the AWA is SORNA, which was enacted for the purpose of "protect[ing] the public from sex offenders and offenders against children" through the creation of a "comprehensive national system for the registration of those offenders." 42 U.S.C.A. § 16901 (West 2008). To that end, jurisdictions must "maintain a jurisdiction-wide sex offender registry" that complies with the standards set out by SORNA. 42 U.S.C.A. § 16912(a) (West 2008). Sex offenders are required to provide several types of information for inclusion in the sex offender registry, including their names and aliases, Social Security numbers, addresses of residences, names and addresses of places of employment, names and addresses of educational

institutions in which the offenders are enrolled, and vehicle information. 42 U.S.C.A. § 16914(a) (West 2008).

In addition to detailing the kinds of information that must be included in the sex offender registry, SORNA dictates when and how convicted sex offenders must register. *See* 42 U.S.C.A. § 16913 (West 2008). As a general matter, sex offenders must register and keep their registration current in each jurisdiction where they reside, work, or attend school. 42 U.S.C.A. § 16913(a) (West 2008). Sex offenders are required to initially register in one of two ways: if the sex offender was sentenced to a term of imprisonment for his underlying offense, he must register before completing the sentence of imprisonment for that offense; otherwise, the sex offender must register within three days of being sentenced for the offense. 42 U.S.C.A. § 16913(b) (West 2008). Following the initial registration, sex offenders must keep their registration current by notifying at least one jurisdiction where they are required to register of all changes of name, residence, employment, or student status within three days of the change. 42 U.S.C.A. § 16913(c) (West 2008).

Of particular importance to this appeal is 42 U.S.C.A. § 16913(d) (West 2008), titled, "Initial registration of sex offenders unable to comply with subsection (b) of this section." This subsection is located within the same section as the aforementioned registration requirements. According to § 16913(d),

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 [SORNA's enactment date] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

To enforce its registration provisions, SORNA includes 18 U.S.C. § 2250(a) (2006), which makes it a federal felony, punishable by up to ten years imprisonment, inter alia, for a person who is required to register under SORNA to travel in interstate commerce and knowingly fail to register or update his sex offender registration.

On February 28, 2007, after the Appellants had committed the acts giving rise to their indictments, the Attorney General issued an interim rule stating that the registration require-ments of SORNA applied to all convicted sex offenders, including those offenders who were convicted of sex offenses prior to the enactment of SORNA ("pre-SORNA offenders"). 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007). According to the Attorney General, the purpose of the interim rule was to "foreclos[e] any dispute as to whether SORNA is applicable where the conviction for the predicate sex offense occurred prior to the enactment of SORNA." *Id.* The Attorney General cited § 16913(d) as the source of his authority to promulgate the rule, "regardless of whether SORNA would apply with such scope absent this rule." *Id.*

### B.

The Appellants argue that the district courts erred in deny-ing their motions to dismiss because the registration require-ments of SORNA did not apply to them at the time they committed their alleged SORNA violations. The Appellants were convicted of their underlying sex offenses and had com-pleted their sentences prior to the enactment of SORNA. Their indictments for violations of SORNA related to conduct that was committed sometime between SORNA's enactment and the issuance of the interim rule regarding the applicability of SORNA to pre-SORNA offenders. According to the Appellants, until the Attorney General issued the interim rule, SORNA's application to pre-SORNA offenders was not established, and thus the Appellants should not have been charged with violating SORNA's registration requirements.

In order to rule on the merits of the Appellants' claim, we must interpret the meaning of 42 U.S.C.A. § 16913(d) (West 2008). Other circuits have recently weighed in on this issue, albeit with differing results. *Compare United States v. Madera*, 528 F.3d 852 (11th Cir. 2008) (per curiam) (holding that SORNA's registration requirements did not apply to pre-SORNA offenders until the issuance of the interim rule), *with United States v. May*, 535 F.3d 912 (8th Cir. 2008) (holding that SORNA's registration requirements applied to pre-SORNA offenders from the time of SORNA's enactment) *and United States v. Hinckley*, No. 07-7107, 2008 U.S. App. LEXIS 24989 (10th Cir. Dec. 9, 2008) (same).

To ascertain the meaning of § 16913(d), this Court must first examine the plain language of the subsection. *See Hillman v. IRS*, 250 F.3d 228, 232 (4th Cir. 2001). As a general rule, "when the terms of a statute are clear, its language is conclusive and courts are 'not free to replace . . . [that clear language] with an unenacted legislative intent.'" *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 453 (1987) (Scalia, J., concurring)). This Court recognizes two "exceptionally rare" exceptions to this rule: (1) "when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary," and (2) "when literal application of the statutory language at issue 'results in an outcome that can truly be characterized as absurd.'" *Hillman*, 250 F.3d at 233 (quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000)).

Only if we determine that the terms of a statutory provision are ambiguous are we then permitted to consider other evidence to interpret the meaning of the provision, including the legislative history and the provision's heading or title. *See Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear."); *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*,

331 U.S. 519, 528-29 (1947) ("[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase." (internal citations omitted)).

Applying these principles of statutory interpretation, we find that SORNA's registration requirements did not apply to pre-SORNA offenders until the Attorney General issued the interim rule specifying the applicability of SORNA's registration requirements to those offenders. Examining the plain language of § 16913(d), the subsection contains two clauses. The first clause states that the Attorney General "shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction." 42 U.S.C.A. § 16913(d) (West 2008). This clause, fairly read, delegates to the Attorney General the authority to specify the requirements of SORNA[3] for all sex offenders who were convicted before the enactment of SORNA.[4] *Madera*, 528 F.3d at 858. Congress' use of the phrase "shall have the authority" indicates that Congress is giving the Attorney General exclusive authority to determine the applicability of SORNA to pre-SORNA offenders, and that, until such a determination is

---

[3]The term "this subchapter" refers to Subchapter I, "Sex Offender Registration and Notification," which contains all of SORNA's registration requirements.

[4]The dissent contends that if § 16913(d) is read in the context of SORNA's other provisions, "subsection (d) merely authorizes the Attorney General to exempt persons with sex offenses that predate July 27, 2006, from SORNA's reach." (Dis. Op. 20). Furthermore, in reaching this interpretation of § 16913(d), the dissent concludes that the subsection is unambiguous.

Curiously, the dissent's finding that § 16913(d) is "unambiguous" requires it to substitute the term "applicability" that actually appears in § 16913(d) with the term "exemption," which does not appear. Thus, while the dissent claims merely to adhere to the plain language of the subsection, its interpretation in fact revises one of its pivotal terms.

made, SORNA's requirements would apply only prospectively and not to pre-SORNA offenders such as the Appellants. *See id.* at 857; *Hinckley*, 2008 U.S. App. LEXIS 24989, at \*67 (McConnell, J., dissenting). The Appellants' indictments were based on conduct occurring prior to the Attorney General's issuance of the interim rule, at a time when SORNA's registration requirements did not yet apply to them. Therefore, they cannot be prosecuted for conduct that was not criminal at the time it was committed. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("[T]he legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place . . . ." (internal quotation omitted)).

In the second clause of § 16913(d), Congress delegates to the Attorney General the authority to prescribe the registration rules "of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section." The second clause of the subsection thus gives the Attorney General the authority to promulgate registration rules for two distinct groups of sex offenders: (1) sex offenders who were convicted before July 27, 2006, and (2) offenders who are unable to comply with subsection (b), the subsection containing SORNA's initial registration requirements. *Madera*, 528 F.3d at 858; *Hinckley*, 2008 U.S. App. LEXIS 24989, at \*67-68 (McConnell, J., dissenting). Reading the first clause in conjunction with the second clause, it follows that the Attorney General has the authority both to "specify the applicability" of SORNA with regard to pre-SORNA offenders and to prescribe registration rules for all pre-SORNA offenders and for other sex offenders who are unable to comply with the initial registration requirements.

The Government contends, however, that § 16913(d) is ambiguous, which would warrant looking beyond the plain language of the subsection to its title, "Initial registration of sex offenders unable to comply with subsection (b) of this section." According to the Government, this title serves to

narrow the scope of the Attorney General's authority to specify the applicability of SORNA's registration requirements, so that it extends only to those pre-SORNA offenders who are unable to comply with the initial registration requirements. Since the Appellants were able to initially register under the sex offender registration systems of their respective states, they do not fall within this narrow category of offenders, and thus SORNA's registration requirements applied to them from the time of SORNA's enactment.

Indeed, those circuits that have held that SORNA's registration requirements applied to pre-SORNA offenders at the time of SORNA's enactment have done so based on a finding that the language of § 16913 is ambiguous. *See May*, 535 F.3d at 918; *Hinckley*, 2008 U.S. App. LEXIS 24989, at *14-15. Specifically, those circuits have adopted the reasoning of *United States v. Beasley*, No. 1:07-CR-115-TCB, 2007 U.S. Dist. LEXIS 85793 (N.D. Ga. Oct. 10, 2007), which found an ambiguity in the second clause of subsection (d). *May*, 535 F.3d at 918-19; *Hinckley*, 2008 U.S. App. LEXIS 24989, at *13-15. According to *Beasley*,

> An additional possible meaning of subsection (d) is that past offenders ("offenders convicted before the enactment of this Act") are included within (and not a separate group from) the broader category of "sex offenders who are unable to comply with subsection (b)," and it is only as to those "sex offenders who are unable to comply with subsection (b)" that the Attorney General was given authority under subsection (d) to issue clarifying regulations.

2007 U.S. Dist. LEXIS 85793, at *17-18; *accord May*, 535 F.3d at 918; *Hinckley*, 2008 U.S. App. LEXIS 24989, at *13-14.

However, this alternative interpretation of § 16913(d) is foreclosed by the plain language of the subsection. The sec-

ond clause of the subsection specifies that the Attorney General may prescribe registration rules for "such sex offenders," i.e. pre-SORNA offenders, *and* for "other categories of sex offenders" who are unable to comply with the initial registration requirements. 42 U.S.C.A. § 16913(d) (West 2008); *see also Hinckley*, 2008 U.S. App. LEXIS 24989, at *73 (McConnell, J., dissenting). It is thus clear that the category of pre-SORNA offenders is a distinct category from "categories of sex offenders who are unable to comply with subsection (b)," and the category of pre-SORNA offenders is not included within this latter group. To interpret § 16913(d) as including the set of pre-SORNA offenders within the set of "categories of sex offenders who are unable to comply within subsection (b)" ignores the term "other," which indicates that the two sets are distinct. "It would be like interpreting a statute that applies to 'humans and to other categories of primate who walk on two legs' as excluding paraplegic humans." *Hinckley*, 2008 U.S. App. LEXIS 24989, at *73 (McConnell, J., dissenting).

Moreover, such an interpretation of § 16913(d) overlooks the first clause of the subsection, which states that the Attorney General has the authority to determine SORNA's applicability to pre-SORNA offenders, and that clause has no language limiting its scope to cover only those pre-SORNA offenders who are also unable to comply with the initial registration requirements of subsection (b). If this Court were to find that such a narrow reading of the subsection were plausible, we would effectively have to read limiting language into the first clause. Had Congress intended to delegate to the Attorney General only the authority to determine SORNA's applicability for past offenders who were also unable to comply with subsection (b), it would have been quite easy for Congress to do so by including limiting language in the first clause of the subsection. However, Congress did not do so, and this Court should not "'replace . . . [that clear language] with an unenacted legislative intent.'" *Morison*, 844 F.2d at 1064 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 453 (1987) (Scalia, J., concurring)).

Nor can we say that applying the plain language of the subsection runs counter to clearly expressed congressional intent or produces an absurd outcome. *See Hillman*, 250 F.3d at 233. Although Congress' intent in passing SORNA was to create a comprehensive national system for the registration of sex offenders, 42 U.S.C.A. § 16901 (West 2008), our interpretation of the subsection does not eviscerate such a comprehensive registration system and in fact arguably helps to achieve such a system. The subsection delegated to the Attorney General the authority to determine whether SORNA's requirements apply to pre-SORNA offenders, and on February 28, 2007, the Attorney General issued an interim rule exercising that authority. Now that the Attorney General has issued the interim rule, there can be no doubt that SORNA's registration requirements now apply to pre-SORNA offenders. Given the patchwork of state approaches towards sex offender registration that existed prior to the enactment of SORNA, it was not "absurd" for Congress to delegate this authority to the Attorney General, with the intent that he exercise it to effectuate a comprehensive registration system.

It is important to note that the decision reached today is quite narrow, for we do not hold that SORNA's registration requirements do not apply to persons who were convicted of sex offenses prior to SORNA's enactment date. Rather, we hold only that SORNA's registration requirements did not apply to pre-SORNA offenders until the Attorney General issued the interim rule on February 28, 2007.

## IV.

Because the Appellants' indictments were based on conduct that pre-dated the Attorney General's interim rule specifying that SORNA's registration requirements applied to pre-SORNA offenders, we reverse the Appellants' convictions and vacate the sentences imposed in connection with those convictions.

*REVERSED AND VACATED*

SHEDD, Circuit Judge, dissenting:

The majority holds that the Sex Offender Registration and Notification Act ("SORNA")[1] did not apply to the defendant-appellants (the "Defendants") until the Attorney General issued interim rules seven months after SORNA's effective date. In my view, the majority reaches this conclusion by reading one of SORNA's subsections — 42 U.S.C. § 16913(d) — out of context. When read in light of § 16913 as a whole and SORNA's other provisions — as controlling case law requires — I conclude that § 16913 is unambiguous and required the Defendants to comply with SORNA on its effective date. Consequently, I would affirm the judgments of the district courts.

I.

As the majority notes, all of the Defendants were convicted of sex offenses under state law between 1993 and 2001, and they completed any prison sentences associated with their convictions before July 27, 2006. As a result of their convictions, the Defendants were required to register as sex offenders under various state statutes, and at least initially they all complied with those state registration requirements.

On July 27, 2006, SORNA became law. SORNA's stated purpose is "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. Among other things, SORNA requires every state to maintain a sex offender registry conforming to SORNA's requirements, *id.* § 16912(a); requires certain persons to register as sex offenders in each state where they

---

[1]Congress passed SORNA as title one of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006).

reside, where they are employed, and where they are a student, *id.* § 16913(a); and requires those persons to keep their registrations current, *id.* § 16913(c). SORNA also authorizes the Attorney General to specify "the applicability of" SORNA to persons convicted of sex offenses before July 27, 2006. *Id.* § 16913(d). Moreover, SORNA makes it unlawful for a person who is required to register under SORNA and travels in interstate commerce to knowingly fail to register or update a registration as required by SORNA. 18 U.S.C. § 2250.

On February 28, 2007, seven months after SORNA's enactment, the Department of Justice (the "DOJ") published interim rules specifying the applicability of SORNA to persons convicted of sex offenses before July 27, 2006. *See* 28 C.F.R. §§ 72.1 to 72.3 (the "Interim Rules"); *see also* Applicability of the Sex Offender Registration and Notification Act, 72 Fed. Reg. 8,894 (Feb. 28, 2007). The Interim Rules make it clear that these sex offenders were covered by SORNA on its effective date. The Interim Rules state that "[t]he requirements of [SORNA] . . . apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3. Moreover, the DOJ's statement accompanying its publication of the Interim Rules states: "*Considered facially*, SORNA requires all sex offenders who were convicted of sex offenses in its registration categories to register in relevant jurisdictions, with no exception for sex offenders whose convictions predate the enactment of SORNA." 72 Fed. Reg. at 8,896 (emphasis added).

After the DOJ published the Interim Rules, the Defendants were indicted for violating one of SORNA's provisions, *see* 18 U.S.C. § 2250, by being persons required to register under SORNA, traveling in interstate commerce, and failing to register or update their registrations as required by SORNA. All of the conduct charged in the indictments occurred prior to February 28, 2007, the effective date of the Interim Rules. After unsuccessfully moving to dismiss their indictments, all

of the Defendants were convicted for violating 18 U.S.C. § 2250.

Though the Defendants raise a number of challenges on appeal, the gravamen of their argument is that we should vacate their convictions and dismiss their indictments because all of their relevant conduct occurred before SORNA applied to them. At least two other circuit courts recently rejected similar arguments. *See United States v. Hinckley*, 550 F.3d 926 (10th Cir. 2008) (holding that SORNA applied to the defendant on SORNA's effective date); *see also United States v. May*, 535 F.3d 912 (8th Cir. 2008) (same), *but see United States v. Madera*, 528 F.3d 852 (11th Cir. 2008) (holding that SORNA did not apply to the defendant until the Attorney General issued the Interim Rules).[2]

## II.

## A.

We review questions of statutory interpretation *de novo*. *Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 286 (4th Cir. 2004). As with any question of statutory interpretation, the "first step . . . is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The Supreme Court has stated that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. A statute is ambiguous if its language, when read in context, is susceptible to more than one reasonable interpretation. *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004).

---

[2]Both *Hinckley* and *May* reach the same result as I do, but those cases employ a slightly different analysis. They conclude that § 16913(d) is ambiguous, but I conclude that it is unambiguous.

If the statutory language is unambiguous, however, the inquiry "is at an end, for [i]f the language is plain and the statutory scheme is coherent and consistent, we need not inquire further. Our sole function is to enforce [the statute] according to its terms." *William v. Gonzales*, 499 F.3d 329, 333 (4th Cir. 2007) (alterations in original) (citations omitted).

B.

With these principles in mind, I turn first to the language of § 16913 — a provision that defines SORNA's applicability — and in particular subsection (d), the subsection on which the majority focuses. Subsection (d) states in its entirety:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d).

Reading this language, the majority concludes that subsection (d) contains two clauses. The first clause, the majority states, authorizes the Attorney General to specify the applicability of SORNA's requirements to all sex offenders who were convicted before SORNA's enactment. The second clause authorizes the Attorney General to prescribe initial registration requirements for certain sex offenders. *Ante* at 9-10. Accepting the majority's view that subsection (d) contains two clauses and that its first clause resolves the question presented in these appeals, I disagree with the majority's interpretation of that clause.

The majority concludes that SORNA did not apply to the Defendants until the Attorney General issued the Interim

Rules. In the majority's view, Congress delegated the "Attorney General exclusive authority to determine the applicability of SORNA to pre-SORNA offenders" because subsection (d) states that the Attorney General "shall have the authority" to specify the applicability of SORNA. *Ante* at 9. Since Congress delegated the Attorney General authority to specify SORNA's applicability, the majority concludes that SORNA could not apply to any sex offender whose conviction predated SORNA until the Attorney General said otherwise.

In my view, the majority misreads subsection (d) in part because it does not give appropriate consideration to all of § 16913's subsections and SORNA's other provisions. As the Supreme Court has stated, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Indeed, "a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning — or ambiguity — of certain words or phrases may only become evident when placed in context." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). In light of § 16913 as a whole and SORNA's other provisions, it becomes clear that subsection (d) does not exempt the Defendants from SORNA's reach pending a determination by the Attorney General.

Section 16913(a) states in relevant part that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). SORNA defines a "sex offender" as "an individual who was convicted of a sex offense," *id.* § 16911, and there is no dispute that the Defendants are "sex offenders" within the meaning of § 16913(a) because they were all convicted of sex offenses under state law between 1993 and 2001. Therefore, under the plain terms of § 16913(a), SORNA

requires the Defendants to register and keep their registrations current.

Moreover, § 16913(a)'s command is absolute. It contains no exceptions for persons who were convicted of sex offenses before SORNA's enactment. *See, e.g.*, *United States v. Zuniga*, No. 4:07CR3156, 2008 WL 2184118, at \*10 (D. Neb. May 23, 2008) (stating that § 16913(a) unambiguously requires every sex offender to register and that its plain language does not make a temporal distinction as to the date of a sex offender's conviction; instead, the statute imposes its requirements on sex offenders without qualification); *accord Hinckley*, 550 F.3d at 933 (stating that *Zuniga*'s interpretation "is the only sensible result in light of the Act's purpose, history, and surrounding language"). Similarly, § 16913(b) states that all sex offenders "shall initially register," and it contains no exception for sex offenders whose convictions predate SORNA. The same is also true of § 16913(c). It directs sex offenders to keep their registrations current, and makes no distinction between sex offenders who were convicted of sex offenses before or after SORNA's enactment. *See Hinckley*, 550 F.3d at 944 (Gorsuch, J., concurring) ("[Section] 16913(c) . . . directs all sex offenders to keep their registration current . . . .").

Moreover, SORNA "establishes a *comprehensive national* system for the registration" of sex offenders, 42 U.S.C. § 16901 (emphasis added), and numerous other statutory provisions confirm SORNA's "comprehensive" nature. For example, SORNA requires every state to maintain a statewide sex offender registry conforming to SORNA's national requirements. *Id.* § 16912. In other sections, SORNA requires the Attorney General to maintain a "*national* database" "for each sex offender," *id.* § 16919(a) (emphasis added), and a "*National* Sex Offender Public Website," which "shall include relevant information for *each* sex offender," *id.* § 16920 (emphasis added).

In addition, SORNA defines the term "sex offender" as an individual who "*was* convicted of a sex offense." *Id.* § 16911 (emphasis added). By using the verb "was," SORNA expressly sweeps persons who were convicted of sex offenses prior to SORNA's enactment within the statute's scope and thus indicates that the statute is not purely prospective in nature, applying only to persons whose sex offenses postdate SORNA's enactment.

Therefore, subsection (d)'s context makes it clear that the provision should be read in light of at least three primary guideposts: first, SORNA establishes a "*comprehensive*" system for the registration of sex offenders; second, subsections (a)-(c) require sex offenders to register, without exception; and third, SORNA defines sex offenders as persons who *were* convicted of sex offenses prior to SORNA's enactment. Reading subsection (d) against this backdrop, I conclude that subsection (d) is unambiguous and does not operate to negate SORNA's coverage of all sex offenders — coverage which is established in subsections (a)-(c).[3] Understood in context, subsection (d) merely authorizes the Attorney General to exempt persons with sex offenses that predate July 27, 2006, from SORNA's reach.[4] In other words, the Attorney General could declare that SORNA is inapplicable to certain persons.

---

[3]Because I conclude that subsection (d) is unambiguous, the rule of lenity does not apply. *United States v. Helem*, 186 F.3d 449, 455 (4th Cir. 1999) ("The rule of lenity, which requires the court to strictly construe criminal statutes, does not apply in this case because the statute is not ambiguous.").

[4]To the extent one considers the DOJ's statement accompanying its publication of the Interim Rules, the statement supports my interpretation of subsection (d) and shows that the Interim Rules were intended to foreclose the exact arguments pressed by the Defendants in these appeals. *See* 72 Fed. Reg. at 8,896 ("[S]ex offenders with predicate convictions predating SORNA who do not wish to be subject to the SORNA registration requirements, or who wish to avoid being held to account for having violated those requirements, have not been barred from attempting to devise arguments that SORNA is inapplicable to them, e.g., because a rule confirming SORNA's applicability has not been issued. *This rule forecloses such claims by making it indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted.*" (emphasis added)).

Further, there is simply nothing in the word "applicability" itself which suggests any determination by the Attorney General must be prospective only. The language certainly allows the Attorney General to determine that no pre-SORNA sex offenders are exempt and that SORNA *continues* to apply to them. Indeed, that is what the Attorney General did by adopting the Interim Rules. Therefore, unless the Attorney General were to exercise his authority to exempt a sex offender from SORNA's reach, SORNA applies to all sex offenders, including the Defendants, regardless of the date of their convictions.

Consistent with Supreme Court precedent, my interpretation of SORNA is "not guided by a single sentence or member of a sentence, but [by] look[ing] to the provisions of the whole law." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990) (quotation marks omitted). Indeed, to read subsection (d) as relieving every pre-SORNA sex offender of any obligation to comply with SORNA, as the majority does, "requires us to believe that Congress sought simultaneously to achieve two manifestly irreconcilable ends: (1) to create a 'comprehensive national system' for the registration of sex offenders, 42 U.S.C. § 16901, and (2) to exempt all existing sex offenders from that comprehensive system." *Hinckley*, 550 F.3d at 945 (Gorsuch, J., concurring). But as the DOJ has stated, "[i]f SORNA were deemed inapplicable to sex offenders convicted prior to its enactment, then the resulting system for registration of sex offenders would be far from 'comprehensive,' and would not be effective in protecting the public from sex offenders." 72 Fed. Reg. at 8,896.

## III.

In addition to raising the statutory interpretation argument discussed above, the Defendants also challenge their convictions on a number of constitutional grounds. Because the majority accepted the Defendants' statutory argument, it had no occasion to reach their constitutional claims. Reviewing their constitutional claims *de novo*, *see United States v.*

*Buculei*, 262 F.3d 322, 327 (4th Cir. 2001) ("We review de novo a challenge to the constitutionality of a federal statute."), I find that the Defendants are not entitled to any relief.

The Defendants argue that their convictions violate the ex post facto and due process clauses of the United States Constitution. In essence, the Defendants contend that their convictions violate these clauses because all of their charged conduct occurred before February 28, 2007, and in their view they had no obligation to comply with SORNA before that date. As discussed in Part II of my dissent, however, I conclude that the Defendants were required to comply with SORNA on July 27, 2006, and the Defendants were charged with traveling in interstate commerce and failing to register or update their registrations as required by SORNA after July 27, 2006. Therefore, their ex post facto and due process claims are without merit. *See Hinckley*, 550 F.3d at 935-39 (upholding SORNA against ex post facto and due process clause challenges); *May*, 535 F.3d at 919-21 (same).

The Defendants next contend that SORNA violates the commerce clause of the United States Constitution because it fails to establish a constitutionally sufficient relationship to the regulation of interstate commerce. I disagree. Under Supreme Court precedent, Congress may regulate three broad categories of activities pursuant to its commerce clause power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995). In these cases, the Defendants were prosecuted for violating 18 U.S.C. § 2250 — a statute that contains an express jurisdictional requirement limiting its application to persons who move in interstate commerce in violation of SORNA. At a minimum, this type of conduct falls within the second category identified in *Lopez* and thus may be regulated pursuant to Congress's

commerce clause power. *See Hinckley*, 550 F.3d at 939-40 (rejecting a commerce clause challenge to SORNA); *May*, 535 F.3d at 921-22 (same).

The Defendants also contend that subsection (d) violates the nondelegation doctrine because it authorizes the Attorney General to determine whether SORNA shall apply retroactively to sex offenders convicted before SORNA's enactment. For the reasons set forth in Part II of my dissent, I disagree with the Defendants that SORNA delegated the Attorney General authority to determine SORNA's retroactive application. As I stated above, SORNA's plain and unambiguous terms state that it applies to all persons convicted of sex offenses, including persons whose convictions predate SORNA's enactment. Thus, the Defendants' nondelegation argument lacks merit.

## IV.

In summary, I would affirm the judgments of the district courts because the Defendants can be held liable under SORNA for their actions during the time period between SORNA's enactment and the DOJ's publication of the Interim Rules.