MICHAEL, Circuit Judge,
dissenting:
The Sex Offender Registration and Notification Act (SORNA or Act), 42 U.S.C. § 16901 et seq., delegates substantial rule-making authority to the United States Attorney General. Under § 113(d) the Attorney General is granted “the authority to specify the applicability of the requirements of [the Act] to sex offenders convicted before July 27, 2006 or [SORNA’s] implementation in a particular jurisdiction” and the authority “to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply -with” the Act’s initial registration requirements. 42 U.S.C. § 16913(d) (2006). Section 112(b) further directs the Attorney General to “issue guidelines and regulations to interpret and implement” the Act. 42 U.S.C. § 16912(b).
The Attorney General does not dispute that, in exercising his rulemaking authority under each of these provisions, he was subject to the procedural requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq. Nor does he dispute that he failed to comply with the APA’s procedures when he promulgated, pursuant to § 113(d), the rule regarding SORNA’s retroactivity and applicability in preimplementation jurisdictions. Because the Attorney General’s justification for noncompliance with the APA was inadequate, the rule promulgated under § 113(d) (codified at 28 C.F.R. § 72.3) is invalid. And because Gould’s prosecution under SORNA depends upon this invalid rule, I respectfully dissent from the majority’s decision to affirm Gould’s conviction under the Act.
I.
Section 113(a) of SORNA provides that: “A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student.” 42 U.S.C. § 16913(a). The statute, however, expressly leaves unresolved the issue of its applicability to sex offenders, like Gould, whose convictions predate the enactment *476 of SORNA or its implementation in particular jurisdictions. See 42 U.S.C. § 16913(d). Section 113(d) further authorizes the Attorney General “to prescribe rules for the registration of such sex offenders and for other categories of sex offenders who are unable to comply with” SORNA’s initial registration requirements. 42 U.S.C. § 16913(d). Because SORNA, as enacted, did not specify its application to past sex offenders, Gould was not subject to prosecution under the Act until the Attorney General made this determination. See United States v. Hatcher, 560 F.3d 222 (4th Cir.2009).
Pursuant to his rulemaking authority under § 113(d), the Attorney General issued an “interim rule” on February 28, 2007, clarifying that “the requirements of [SORNA] apply to all sex offenders (as defined in that Act), including those convicted of the offense for which registration is required prior to the enactment of the Act.” 72 Fed.Reg. 8894, 8896 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3 (2007)). The Attorney General explained that:
In contrast to SORNA’s provision of a three-year grace period for jurisdictions to implement its requirements, SORNA’s direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders in the categories for which SORNA requires registration.
72 Fed.Reg. at 8895.
In issuing the interim rule, the Attorney General declined to comply with the public notice and comment procedures required under the APA. Subsection 553(b) of the APA broadly requires that notice of all proposed rules be published in the Federal Register. 5 U.S.C. § 553(b). Subsection 553(c) further provides that:
After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.
5 U.S.C. § 553(c). Except as provided by statute, the requirements of notice and comment rulemaking pursuant to § 553(b) and (c) do not apply:
(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.
5 U.S.C. § 553(b)(A), (B). The APA also requires the publication of any substantive rule at least thirty days before its effective date, 5 U.S.C. § 553(d), except where the rule is interpretive, where the rule grants an exception or relieves a restriction, or “as otherwise provided by the agency for good cause found and published with the rule,” id.
The Attorney General relied upon the good cause exception in § 553(b)(B) to excuse the lack of public notice and comment for the interim rules. He likewise relied on the good cause exception in § 553(d)(3) to excuse delaying implementation of the rule. He claimed that notice and comment was “impracticable, unnecessary, or contrary to the public interest” as provided in 5 U.S.C. § 553(b)(B), explaining that:
The immediate effectiveness of this rule is necessary to eliminate any possi *477 ble uncertainty about the applicability of the Act’s requirements- — and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required — to sex offenders whose predicate convictions predate the enactment of SORNA. Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions. The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA. This would thwart the legislative objective of “protecting] the public from sex offenders and offenders against children” by establishing “a comprehensive national system for the registration of those offenders,” SORNA § 102, because a substantial class of sex offenders could evade the Act’s registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.
It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. 553(b) or with the delayed effective date normally required under 5 U.S.C. 553(d).
72 Fed.Reg. at 8896-97.
Although the interim rule was accompanied by a request for post-promulgation comments, the Attorney General never published a response to any comments that he may have received. The Attorney General also sought comments in the Federal Register notice for the proposed guidelines under § 112(b), see 72 Fed.Reg. 30210, 30210 (May 30, 2007), and did address these comments in the final guidelines issued on July 2, 2008, see 73 Fed.Reg. 38030, 38030-32 (July 2, 2008).
Because the Attorney General lacked sufficient justification for failing to comply with the APA’s notice and comment requirements in promulgating the rule under § 113(d) (28 C.F.R. § 72.3), the rule is invalid and may not serve as the basis for Gould’s, prosecution and conviction under SORNA.
A.
The bar for invoking § 553(b)(B)’s good cause exception is a high one: “The exception excuses notice and comment in emergency situations, or where delay could result in serious harm.” Jifry v. FAA, 370 F.3d 1174, 1179 (D.C.Cir.2004) (internal citation removed); see also Nat’l Nutritional Foods Ass’n v. Kennedy, 572 F.2d 377, 384 (2d Cir.1978) (“The legislative history of the Administrative Procedure Act demonstrates that Congress intended the exceptions in § 553(b)(B) to be narrow ones.”). “If conclusory statements that normal procedures were not followed because of the need to provide immediate guidance and information constituted ‘good cause,’ then an exception to the notice requirement would be created that would swallow the rule.” Zhang v. Slattery, 55 F.3d 732, 746, 747 (2d Cir.1995) (internal quotations and alterations omitted) (noting that “a largely conclusory statement” that a rule’s “immediate promulgation is necessary in order to benefit the greatest number of’ affected parties “is not enough” because, “[presumably, agencies deem all their rules beneficial; the notice and com *478 ment requirement would be a dead letter if compliance could be excused whenever the beneficial effect would thereby be accelerated”).
Courts have therefore “looked askance at agencies’ attempts to avoid the standard notice and comment procedures, holding that exceptions under § 553 must be ‘narrowly construed and only reluctantly countenanced’ in order to assure that ‘an agency’s decisions will be informed and responsive.’ ” Asiana Airlines v. FAA, 134 F.3d 393, 396 (D.C.Cir.1998) (quoting N.J. Dep’t of Envtl. Prot. v. EPA, 626 F.2d 1038, 1045 (D.C.Cir.1980)).
In promulgating the February 28, 2007, rule, the Attorney General elected to rely on the public interest element of § 553(b)(B)’s good cause exception. “[T]he Attorney General’s Manual states that [the public interest exception] ‘connotes a situation in which the interest of the public would be defeated by any requirement of advance notice,’ as when announcement of a proposed rule would enable the sort of ... manipulation the rule sought to prevent.” Util. Solid Waste Activities Group v. EPA, 236 F.3d 749, 755 (D.C.Cir.2001) (quoting U.S. Dept. of Justice, Attorney General’s Manual on the Administrative Procedure Act 31 (1947)). We must therefore consider whether the public interest would have been defeated by allowing notice and comment before promulgating the interim rule.
The Attorney General argues that the public interest would be harmed by delay. Specifically, he contends that delay “would impede the effective registration of [ ] sex offenders [to whom coverage was extended under the interim rule] and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions.” 72 Fed.Reg. at 8896. According to the Attorney General, SORNA’s objective of protecting the public from sex offenders and specified offenders against children would be thwarted by delay “because a substantial class of sex offenders could evade the Act’s registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.” Id. at 8897. This purported justification does not withstand examination.
First, the Attorney General’s declaration in 28 C.F.R. § 72.3 that SORNA applies retroactively and applies in jurisdictions that have yet to implement the Act did not have the immediate effect of compelling any additional sex offenders to register; nor did it provide any additional registration information either to states or to the federal government. The announcement of the rule merely allowed the federal government to prosecute under SORNA sex offenders who were currently violating state registration laws and thus were already subject to prosecution under existing state laws. The Attorney General’s July 2, 2008, final guidance makes clear that if Maryland had lacked an existing registry or if Gould’s crime required registration under SORNA but not under Maryland’s existing law, Gould would not be required to register until Maryland had affirmatively taken steps to register him, including “fully instructing [him] about the SORNA requirements, obtaining signed acknowledgments of such instructions, and obtaining and entering into the registry all information about [him] required under SORNA.” 73 Fed.Reg. at 38063. These steps could not occur until Maryland elected to implement SORNA, a decision Maryland was granted up to five years to make. See 42 U.S.C. § 16924.
Further, under the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program (Me *479 gan’s Law), 42 U.S.C. § 14071 et seq., the federal government already possessed the power to prosecute many of the sex offenders who became subject to prosecution under SORNA following the promulgation of 28 C.F.R. § 72.3. Under Megan’s Law, which remains in effect until at least July 27, 2009, see 42 U.S.C. § 16924(a), 16929, the federal government has the authority to prosecute essentially any offender who would be subject to prosecution under SORNA based upon his interstate movement. Compare 42 U.S.C. § 14072(g), (i) (Megan’s Law) (providing for federal criminal prosecution of any person who knowingly fails to register under a state’s sexual offender registration program and who changes address to another state) with 18 U.S.C. § 2250(a) (SORNA) (providing for prosecution of any sex offender who knowingly fails to register or update a registration as required by SORNA and “travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country”).
Second, the Attorney General’s assertion that harm to the general public would result from delay assumes that it was inevitable that he would declare that SORNA applied retroactively and in pre-implementation jurisdictions. If the Attorney General had promulgated a rule that SORNA does not apply to past sex offenders or those in pre-implementation jurisdictions, no possible harm to the public would have resulted from the delay; these offenders would never have become subject to federal prosecution under SORNA. In contrast, past sex offenders were undoubtedly harmed by the Attorney General’s decision not to consider their views in promulgating the interim rule.
Third, to the extent the Attorney General believed that delay must be avoided to “eliminate any possible uncertainty about the applicability of the Act’s requirements” (particularly for jurisdictions considering whether to implement SORNA’s requirements), he significantly undercut this rationale by requesting post-promulgation comments on 28 C.F.R. § 72.3. If post-promulgation input was solicited out of a genuine interest in considering the public’s views regarding the applicability and implementation of SORNA, it would have made considerably more sense for the Attorney General to have requested the comments prior to promulgating the interim rule, as the APA requires. This is especially true because the possibility of an alteration to the interim rule after its promulgation increases rather than eliminates uncertainty.
On the other hand, if the Attorney General was not genuinely interested in considering the public’s views, requesting post-promulgation comments makes a sham of the APA’s rulemaking procedures. Indeed, “[i]t is antithetical to the structure and purpose of the APA for an agency to implement a rule first, and then seek comment later.” Paulsen v. Daniels, 413 F.3d 999, 1005 (9th Cir.2005). This is so because “[sjection 553 is designed to give affected parties an opportunity to participate in agency decisionmaking early in the process, when the agency is more likely to consider alternative ideas.” N. Arapahoe Tribe v. Hodel, 808 F.2d 741, 751 (10th Cir.1987). “Notice and comment procedures afford interested parties a meaningful opportunity to participate in the rulemaking process and assure that an agency’s decisions will be informed and responsive.” Mobil Oil Corp. v. Dept. of Energy, 728 F.2d 1477, 1490 (Temp.Emer.Ct.App.1983).
In U.S. Steel Corp. v. EPA, 595 F.2d 207 (5th Cir.1979), the Environmental Protection Agency (EPA) advanced the argument that “despite its lack of literal compliance with § 553[it] satisfied the intent of § 553 by accepting post-promulgation comments *480 and keeping an open mind about revisions.” Id. at 214. The Fifth Circuit disagreed:
The EPA overlooks ... the crucial difference between comments before and after rule promulgation. Section 553 is designed to ensure that affected parties have an opportunity to participate in and influence agency decision making at an early stage, when the agency is more likely to give real consideration to alternative ideas.
Id. Thus, the court rejected EPA’s argument that “even if it was obliged to afford opportunity for § 553 notice and comment before making the designations, its failure to do so was cured by its acceptance of comments after the effective date.” Id. Adopting EPA’s argument, the court said, “would lead in the long run to depriving parties affected by agency action of any way to enforce their § 553 rights to prepromulgation notice and comment.” Id. The same reasoning applies in this case.
Finally, any contention that jurisdictions needed clarity about the retroactive application of SORNA before deciding whether to implement the Act is insufficient to invoke the good cause exception in this case. Jurisdictions were afforded three full years (extendable for an additional two years) to implement SORNA. 42 U.S.C. § 16924(a), (b). Courts have enforced § 553’s procedural requirements where states were given considerably shorter time frames in which to act in response to agency rulemaking. See U.S. Steel Corp. v. EPA, 649 F.2d 572 (8th Cir.1981) (less than one year time frame for states to draft state implementation plans under Clean Air Act after EPA promulgated list of areas not in attainment for national ambient air quality standards); W. Oil & Gas. Ass’n v. EPA, 633 F.2d 803 (9th Cir.1980) (same); N.J. Dep’t of Envtl. Prot. v. EPA, 626 F.2d 1038 (D.C.Cir.1980) (same); Sharon Steel Corp. v. EPA, 597 F.2d 377 (3d Cir.1979) (same); U.S. Steel Corp. v. EPA, 595 F.2d 207 (5th Cir.1979) (same); but see Republic Steel Corp. v. Costle, 621 F.2d 797 (6th Cir.1980) (upholding failure to comply with APA requirements for same issue); U.S. Steel Corp. v. EPA, 605 F.2d 283 (7th Cir.1979) (same). Further, even if states were given a shorter deadline to work with, the tight deadline would not excuse the Attorney General’s invocation of good cause. “As a general matter, strict congressionally imposed deadlines, without more, by no means warrant invocation of the good cause exception.” Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1236 (D.C.Cir.1994) (internal quotations omitted). Indeed, in spite of the Attorney General’s hurried rulemaking, no state thus far has elected to implement SORNA, and the Attorney General recently granted a blanket one-year extension to all jurisdictions to allow substantial implementation of the Act. See http://www.ojp.usdoj. gov/ smart/pdfs/sornaorder.pdf.
Ultimately, if Congress truly wanted the Attorney General to make a determination regarding the retroactivity of SORNA without engaging in the required notice and comment and receiving outside input, it had several options. Congress could have simply declared SORNA to apply retroactively and to apply in each jurisdiction prior to that jurisdiction’s implementation of the Act. Alternatively, Congress could have expressly waived the APA’s procedural requirements. See Asiana Airlines v. FAA, 134 F.3d 393, 398 (D.C.Cir.1998) (noting that “when Congress sets forth specific procedures that express its clear intent that APA notice and comment procedures need not be followed, an agency may lawfully depart from the normally obligatory procedures of the APA”) (internal quotations and alterations omitted). The fact that Congress delegated signifi *481 cant rulemaking responsibility to the Attorney General and did not expressly streamline the rulemaking procedures suggests that Congress did not want the Attorney General to take his responsibility lightly and avoid public participation in the rulemaking process. See Levesque v. Block, 723 F.2d 175, 185 (1st Cir.1983) (“[I]f Congress was troubled by th[e] prospect [of a delay in rulemaking], it could have mandated immediate implementation.”). For these reasons, the Attorney General did not properly invoke § 553(b)(B)’s good cause exception.
B.
The Attorney General’s decision to forgo the required 30-day waiting period before 28 C.F.R. § 72.3 went into effect similarly cannot be excused by good cause. Although courts have regarded § 553(d)(3)’s good cause standard as distinct from and somewhat more flexible than § 553(b)(B)’s good cause standard, see Am. Fed’n of Gov’t Employees v. Block, 655 F.2d 1153, 1156 (D.C.Cir.1981), the Attorney General’s failure to engage in the required waiting period in this case raises important concerns in addition to those implicated by the lack of notice and comment. The decision here not to delay implementation of the rule resulted in a complete lack of notice to pre-SORNA sex offenders, such as Gould, that they would be subject to federal prosecution and a prison term of up to ten years effective immediately on February 28, 2007, when the Federal Register notice was published.
As courts have explained, “the purpose of the thirty-day waiting period is to give affected parties a reasonable time to adjust their behavior before the final rule takes effect.” Omnipoint Corp. v. FCC, 78 F.3d 620, 630 (D.C.Cir.1996). Thus, “[i]n determining whether good cause exists, an agency should ‘balance the necessity for immediate implementation against principles of fundamental fairness which require that all affected persons be afforded a reasonable amount of time to prepare for the effective date of its ruling.’ ” Id. (quoting United States v. Gavrilovic, 551 F.2d 1099, 1105 (8th Cir.1977)). Because sex offenders were subject to immediate federal prosecution under SORNA when the interim rule was announced on February 28, 2007, see United States v. Hatcher, 560 F.3d 222 (4th Cir.2009), on that date, with no prior notice, Gould was suddenly committing a crime punishable by up to ten years in prison. See 18 U.S.C. § 2250(a); cf. 42 U.S.C. § 14072(i) (one year maximum sentence for first-time Megan’s Law violation); Md.Code Ann., Crim. Proc. § 11-721(b) (three year maximum sentence for first-time failure to register under Maryland law). In light of the very substantial new penalties and the lack of compelling justification for avoiding delay, giving sex offenders no grace period in which to register is wholly inconsistent with § 553(d)(3)’s concept of good cause.
II.
It is clear that the Attorney General promulgated 28 C.F.R. § 72.3 in violation of the APA. The remaining issue is therefore one of remedy. “It is fundamental law that a rule promulgated by a federal agency is not valid unless adopted in substantial compliance with the requirements of the APA.” N. Am. Coal Corp. v. Dir. Office of Workers’ Comp. Programs, 854 F.2d 386, 388 (10th Cir.1988). As the Ninth Circuit thoughtfully explained, courts
must exercise great caution in applying the harmless error rule in the administrative rulemaking context. The reason is apparent: Harmless error is more readily abused there than in the civil or criminal trial context. An agency is not *482 required to adopt a rule that conforms in any way to the comments presented to it. So long as it explains its reasons, it may adopt a rule that all commentators think is stupid or unnecessary. Thus, if the harmless error rule were to look solely to result, an agency could always claim that it would have adopted the same rule even if it had complied with the APA procedures. To avoid gutting the APA’s procedural requirements, harmless error analysis in administrative rulemaking must therefore focus on the process as well as the result. We have held that the failure to provide notice and comment is harmless only where the agency’s mistake clearly had no bearing on the procedure used or the substance of decision reached.
Riverbend Farms, Inc. v. Madigan, 958 F.2d 1479, 1487 (9th Cir.1992) (internal quotations omitted); see also Nat’l Org. of Veterans’ Advocates, Inc. v. Sec’y of Veterans Affairs, 260 F.3d 1365, 1375 (Fed.Cir. 2001) (“Failure to allow notice and comment, where required, is grounds for invalidating the rule”). I agree. The appropriate remedy in this case is invalidation of the rule and reversal of Gould’s conviction on the ground that the application of SORNA to Gould relies on the invalid rule.
I recognize that the Attorney General would be within his authority to promulgate the same rule and guidelines after engaging in the APA’s required notice and comment period. See Riverbend Farms, 958 F.2d at 1487. Indeed, it may be that, at most, minimal substantive changes would arise from requiring the Attorney General to promulgate a new rule in compliance with § 553’s procedural requirements. Nevertheless, I believe holding the rule invalid and reversing Gould’s conviction is warranted because allowing the Attorney General to sidestep the requirements of the APA here establishes a dangerous precedent. In cases, for example, where the challengers of a regulation represent familiar economic interests, courts routinely enforce compliance with the APA’s procedural safeguards. See, e.g., Util. Solid Waste Activities Group v. EPA, 236 F.3d 749 (D.C.Cir.2001); Mobil Oil Corp. v. EPA, 35 F.3d 579 (D.C.Cir.1994); Tenn. Gas Pipeline Co. v. FERC, 969 F.2d 1141 (D.C.Cir.1992); U.S. Steel Corp. v. U.S. EPA, 595 F.2d 207 (5th Cir.1979). Here, where the adversely affected group — sex offenders — is a despised and marginalized one, the “public interest” is invoked to exclude them from the rulemaking process. The APA does not draw such a distinction.